IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Consolidated Civil Action No. 5:13-CV-00427-D
[Central District of California Case No. EDCV 13-730 GHK (DTBx)]

| | |
|---|---|
| KELLY JENKINS ORTIZ,<br><br>        Plaintiff,<br><br>v.<br><br>SAMUEL T. HASSELL, MARKETEL MEDIA, INC., INTELIMARC, INC. AND DOES 1-10,<br><br>        Defendants. | SECOND AMENDED COMPLAINT FOR<br><br>(1) BREACH OF FIDUCIARY DUTY;<br>(2) BREACH OF FIDUCIARY DUTY;<br>(3) BREACH OF FIDUCIARY DUTY;<br>(4) CONVERSION;<br>(5) CIVIL CONSPIRACY;<br>(6) CONSTRUCTIVE FRAUD;<br>(7) BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAITH DEALING;<br>(8) FRAUD BY CONCEALMENT;<br>(9) MANDATORY BUYOUT; AND<br>(10) COMPEL INSPECTION OF BOOKS AND RECORDS<br><br>*(DEMAND FOR JURY TRIAL)* |

## JURISDICTIONAL ALLEGATIONS

1.  This court has original jurisdiction under 28 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars. Defendants Sam T. Hassell ("Hassell"), Marketel Media, Inc. ("Marketel"), and Intelimarc, Inc. ("Intelimarc"), are citizens of North Carolina. At all times and at the time the original complaint in this action was filed, Intelimarc was

1

incorporated in and its principal place of business was in North Carolina. Marketel was incorporated in and since November 2012 (including at the time the original complaint in this action was filed) the principal place of business of Marketel was in North Carolina. Plaintiff Kelly Jenkins Ortiz is a citizen of California.

2. This case was filed in the Central District of California; however, on Defendants' motion, that court subsequently ordered the case transferred to this District, where it was consolidated with a pending case, Marketel Media, Inc., and Samuel T. Hassell v. Mediapotamus, Inc., and Kelly Jenkins Ortiz, Civil Action No. 5:13-CV-00427-D. On December 23, 2013, this Court granted Plaintiff leave to amend the conversion, constructive fraud, and fraud-by-concealment claims.

## FACTUAL ALLEGATIONS

3. Plaintiff was at all times herein and is currently a shareholder of Defendant Marketel during all events described herein.

4. Defendant Hassell is currently the controlling shareholder of Defendant Marketel. Marketel also does business under the fictitious business name "Intelerep." Also, Defendant Hassell created and is the 100% owner of Defendant Intelimarc and, on information and belief, Does 1 through 10. Hassell in bad faith dominated and controlled Marketel, Intelimarc, and DOES 1-10 as follows but not limited to:

    a. Hassell commingled funds and other assets for his own convenience and to assist in evading payment of obligations;

    b. Hassell diverted funds and other assets for other than corporate uses;

    c. Hassell treated the assets of the corporations as his own;

    d. Hassell failed to issue shares of the corporations;

    e. Hassell failed to maintain minutes or adequate corporate records of the corporations;

    f. Hassell used the corporations as a mere shell, instrumentality, and/or conduit for himself; and

2

g. Hassell diverted assets from the corporations to the detriment of creditors, including Plaintiff.

Accordingly, Hassell is liable for the acts of Marketel, Intelimarc, and DOES 1-10, and vice versa, as alter-egos of each other. Recognition of the privilege of separate existence would promote injustice.

5. In addition, Intelimarc and DOES 1-10 are vicariously liable for all of Hassell's actions because (1) Hassell purportedly acted as Intelimarc's, and on information and belief DOES 1-10's sole shareholder, director, officer, and employee, and authorized himself to act accordingly; (2) Hassell acted within the scope of his self-defined employment at Intelimarc, and on information and belief DOES 1-10, and in furtherance of Intelimarc's and DOES 1-10's so-called business; and (3) Hassell ratified all of his actions on behalf of Intelimarc and DOES 1-10.

6. In July of 2011, Defendant Marketel was incorporated in North Carolina pursuant to an Agreement of Ownership of Marketel Media ("Agreement of Ownership"). A true and correct copy of that Agreement of Ownership is attached hereto as **Exhibit A**. The Agreement of Ownership was prepared by Hassell prior to incorporation and was executed without change after incorporation. Marketel had two shareholders when it was incorporated: Plaintiff and Defendant Hassell. The shares were split equally, and the Agreement of Ownership contained an anti-dilution clause. The Agreement of Ownership was to be governed by North Carolina law, but did not contain a venue provision.

7. Marketel is in the business of advertising and specializes in placing political advertisements in the national and local media, including but not limited to television, radio, and Internet. Marketel also has non-political clients.

8. Initially, Plaintiff acted as President. Hassell was at the time employed as an officer of a client of Marketel, AMAC (Association of Mature American Citizens, Inc.). Both Plaintiff and Hassell acted as directors of Marketel.

9. Plaintiff, working from Temecula, California, was the contact point for all vendors from which Marketel purchased advertising space and air time for its clients. All

invoices to clients were sent from the Temecula address and all payments were received by the Temecula office. Plaintiff was the contact person for Marketel's vendors. Plaintiff also handled the finances of Marketel from the Temecula office, and inserted all orders with media vendors.

10. Hassell engaged in client relations and sought to obtain new clients from his office in North Carolina, as well as took regular trips out-of-state (including California) to meet with potential or current clients.

11. By late 2011, Marketel had obtained as a client Newt Gingrich's "Winning Our Future" Super PAC. Marketel's profits had dramatically increased, which it consistently paid according to the Agreement of Ownership. The net earnings for Plaintiff and Hassell were roughly equivalent in accordance with their equal stock ownership, or 50/50.

12. Marketel did not pay these profits directly to Hassell, but rather, at Hassell's direction and insistence, it paid Plaintiff's profits to her corporation, Mediapotamus, and Hassell's profits to various of Hassell's wholly owned entities. One of Hassell's entities was Intelimarc. Plaintiff became familiar with Intelimarc by, among other things, Hassell placing one of Marketel's advertising "buys" through Intelimarc while Plaintiff was out of the California office and unavailable to place the buy. Accordingly, Plaintiff agreed in this single instance that Hassell could place the buy through Intelimarc on the condition that the profit was to be repaid by Intelimarc to Marketel. Plaintiff understood the Intelimarc entity to be under the complete and sole control of Hassell. On information and belief, all of the profit from this single advertising buy was repaid by Intelimarc to Marketel, which reinforced Ortiz' belief that Intelimarc was simply an extension of Hassell and under his complete and sole control.

13. In 2012, Hassell suggested to Plaintiff that the officer positions should be changed for the best interests of Marketel. Marketel's attorney, Robert deRossett ("deRossett"), reinforced the suggestion by giving legal advice to Hassell and Plaintiff pertaining to the change. On information and belief, Hassell had been forced to take a leave of absence and then resign from AMAC due to sexual harassment charges pending against him from his administrative assistant. Hassell became Chief Executive Officer and President, while Ortiz was changed to

4

Chief Financial Officer. Further at the behest of Hassell and deRossett, Marketel filed an Election by a Small Business Corporation (Sub S Election) (pursuant to section 1362 of the Internal Revenue Code). Both Hassell and deRossett suggested that Hassell should be listed as a majority shareholder (51%) for sake of Marketel's stability. No consideration was contemplated or paid to Plaintiff. After the Sub S Election was filed, profits continued to be split 50/50. Neither Hassell nor deRossett disclosed that deRossett was in fact Hassell's brother until after the changes to Marketel's ownership, as reflected in the Subchapter S election, had been made. DeRossett failed to disclose the conflict of interest between Hassell and Plaintiff, or that Plaintiff should seek independent legal counsel, or, on information and belief, that deRossett had previously represented Hassell.

14. In or about September 2012, with profits (and Plaintiff's earnings) continuing and growing at a high level, Hassell arranged a presentation by himself to Plaintiff, outside advertising agencies, a production company, and a copywriter. Hassell proposed forming a joint venture enterprise, consisting of Marketel and the outside advertising agencies, enabling the joint venture to be a full-service marketing business.

15. Plaintiff contemplated Hassell's proposal of a joint venture, but never agreed to it, as required by the Agreement for Ownership.

16. After taking over complete control of Marketel, Hassell caused to be issued to his corporation, Intelimarc, the following payments from Marketel's profits: on November 9, 2012, $94,959.01; on December 31, 2012, $38,932.35; and on December 31, 2012, $50,000, for a total of $183,891.36. On information and belief, Hassell has continued to pay 100% of the profits of Marketel (including its dba, Intelerep) to himself or his corporations.

17. On or about December 27, 2013, Hassell caused Marketel to issue Plaintiff a fraudulent IRS Form K-1 and a North Carolina K-1 for 2013, attributing income, I.R.C. Section 179 expense, excluded meals and entertainment expense, and North Carolina sourced income to Plaintiff. Said K-1's were untimely, misrepresented the profit to Plaintiff, misrepresented that Plaintiff received North Carolina sourced income, were issued to expose Plaintiff to accounting

5

costs, tax return audit, and tax liability in North Carolina, and were issued to coerce Plaintiff into settlement.

## FIRST CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Against Defendant Hassell and DOES 1-10)

18. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 17 as though fully set forth herein.

19. In or about September 2012, Hassell unilaterally changed the structure of splitting income. Rather than continuing to divide profits 50/50, Hassell imposed a new "formula," under which he began receiving over 97% of the profits and Plaintiff received less than 3%. Plaintiff objected, but Hassell continued to divide profits based upon his new "formula" to his own benefit and to Plaintiff's detriment. Consequently, relations began to break down between Hassell and Plaintiff.

20. In or about November 2012, Hassell locked Plaintiff out of Marketel's bank accounts. Hassell further demanded all mail received at the California office of Marketel be forwarded to Hassell's office in North Carolina and demanded control of all financial records for Marketel. Hassell demanded that Plaintiff resign as an officer and director of Marketel, but Plaintiff refused. Since November 2012, and at the time the original complaint in this action was filed, the principal place of business of Marketel was and continues to be North Carolina. In an effort to mitigate any damages to Marketel and herself, Plaintiff began forwarding mail to Hassell's North Carolina office and sent Hassell the financial records of Marketel. Subsequently, Hassell refused to accept the forwarded mail. Hassell was and currently is in complete control over Marketel's operations.

21. On or about December 3, 2012, Hassell purported to appoint himself as the sole initial director and take director's action by consent, at which time Hassell allegedly:

    a. Appointed himself as President, Secretary, and Treasurer;

    b. Authorized the back-dated issuance of stock effective December 23, 2011 of 51 shares to himself and 49 shares to Plaintiff;

6

c. Made himself the sole signatory of the Marketel bank account; and

d. Adopted bylaws providing for a single director.

None of the actions described in this paragraph 21 was authorized by the shareholders or a duly constituted board of directors, and each of the actions was done without notice to Plaintiff in any capacity.

22. In February 2013, Hassell requested that Plaintiff relinquish her shares in Marketel in exchange for a release of "definite" shareholder liability, as Hassell's "advisors" claimed. Under information and belief, Hassell's "advisors" included deRossett. Hassell forwarded Plaintiff a "Redemption Agreement." In an attempt to extort Plaintiff and obtain the surrender of her ownership in Marketel, Hassell insinuated that Plaintiff had engaged in criminal behavior with Ashley Long, Hassell's (now) former secretary with whom he had a close personal relationship and who worked under Hassell at his North Carolina office, and that Plaintiff would have tax liability.

23. Defendants and each of them owed and owes Plaintiff a fiduciary duty, as Hassell and Plaintiff are the only two shareholders of Marketel and Hassell is the current controlling shareholder of Marketel. Hassell arranged to have deRossett act as the corporate attorney for Marketel without disclosing the actual conflict of interest, i.e., familial relationship, prior representation, and bias in favor of Hassell. Neither Hassell nor deRossett advised Plaintiff to obtain independent legal representation. By virtue of the foregoing, Hassell breached his fiduciary duty to Plaintiff. Defendants and each of their actions were fraudulent, willful, wanton, and malicious, and done for the purpose of defrauding Plaintiff and causing Plaintiff to suffer financial loss, humiliation, mental anguish, and emotional and physical distress.

24. Defendants and each of them have proximately caused Plaintiff damage by their breaches of fiduciary duties in an amount to be proven at trial, but not less than $700,000.00. In committing the acts alleged, Defendants and each of them fraudulently, willfully, wantonly, maliciously, oppressively, and with a callous and intentional disregard of Plaintiff's interests, subjected Plaintiff to severe and unjust hardship, knowing that their conduct was substantially

likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

## SECOND CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Against Defendants Hassell, Intelimarc, and DOES 1-10)

25. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

26. In or about 2012, Defendants and each of them diverted and usurped Marketel's opportunities and clients to Hassell's corporation, Intelimarc, Inc., and on information and belief, Does 1 through 10. On information and belief, Hassell held and currently holds 100% of the stock in Intelimarc. Defendants and each of them funneled at least $1,263,348 of business from the "Winning Our Future" Super PAC account to Intelimarc – never disclosing this fact to Plaintiff. The "Winning Our Future" Super PAC was an existing client of Marketel when the business were diverted. At Marketel's 15% agency fee, Defendants and each of them diverted at least $190,242.20 in profits from Marketel and $95,121.10 in profits from Plaintiff.

27. Intelimarc was a fiduciary of Plaintiff by virtue of its sole ownership and control by Hassell, as well as Intelimarc's previously acting as a proxy for one of Marketel's advertising buys. Defendants and each of them breached fiduciary duties to Plaintiff by secretly diverting and usurping Marketel's opportunities to Intelimarc. Defendants and each of their acts have proximately caused Plaintiff damage in an amount to be proven at trial, but no less than $95,121.10. In committing the acts alleged, Defendants and each of them fraudulently, wantonly, willfully, maliciously, oppressively, and with a callous and intentional disregard of Plaintiff's interests, subjected Plaintiff to severe and unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

## THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Against Defendant Hassell and DOES 1-10)

28.  Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 27 as though fully set forth herein.

29.  Hassell further breached his fiduciary duty to Plaintiff by engaging in a close personal relationship with Ashley Long ("Long") and others. Hassell authorized Long to access the Marketel business checking account and sign checks. On information and belief, Hassell used corporate funds to further his close personal relationship with Long by issuing unauthorized "bonuses" and other "benefits" in an amount of at least $9,845.68. After Hassell fired Long and broke off their close personal relationship, and while Ortiz was demanding for inspection all of the financial records in Hassell's control (including records of the additional payments to Long), Hassell accused Ortiz and Long of conspiring to embezzle the money through use of check forgeries in order to cover up his own embezzlement with Long. Hassell attempted to recover the money from Ortiz, her shares in Marketel, and a release of Plaintiff's claim against Defendants by extorting Ortiz with threats of criminal action. Long was Hassell's secretary in North Carolina under his immediate control and supervision, and the so-called "forgeries" are all of Hassell's signature on Marketel's business checks under the control of Hassell. On information and belief, Hassell also authorized Long to use Hassell's Marketel debit card for non-business expenditures to further the close personal relationship between Hassell and Long, in an amount to be proven at trial.

30.  Defendants and each of their acts have proximately caused Plaintiff damage in an amount to be proven at trial. In committing the acts alleged, Defendants and each of them fraudulently, wantonly, willfully, maliciously, oppressively, and with a callous and intentional disregard of Plaintiff's interests, subjected Plaintiff to severe and unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

## FOURTH CAUSE OF ACTION – CONVERSION

(Against Defendants Hassell, Intelimarc, and DOES 1-10)

31. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

32. Ortiz owned 50% of the monies derived from Marketel's profits under the Agreement for Ownership, to which Ortiz was and is entitled to immediate possession.

33. Defendants and each of them wrongfully converted those certain monies belonging to Ortiz by improperly and without agreement instituting a new "formula," and also by diverting Marketel's profits to Intelimarc and Does 1 through 10. Defendants and each of them were not authorized to possess or control Ortiz's monies, but acted and intended to exercise dominion and control over such. By doing so, Defendants committed an unauthorized assumption and exercised the right of ownership over certain and specific monies belonging to Ortiz, and excluded (and is excluding) Ortiz from her ownership rights to those certain monies. Those certain and specific monies are determinable sums, or half of all of Marketel's (including Marketel doing business as Intelerep) and Intelimarc's profits. Those certain and specific monies include, but are not limited to, a 50% interest in the $183,891.36 identified in Paragraph 16, the $190,242.20 identified in Paragraph 26, and the $9,845.68 identified in Paragraph 29.

34. Defendants' acts have proximately caused Plaintiff damage in an amount to be proven a trial but not less than $795,121.10. In committing the acts alleged, Defendants and each of them fraudulently, willfully, wantonly, maliciously, oppressively, and with a callous and intentional disregard of Ortiz's interests, subjected Ortiz to severe and unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Ortiz. As a result of this conduct, Ortiz is entitled to punitive damages.

## FIFTH CAUSE OF ACTION – CIVIL CONSPIRACY

(Against Defendants Hassell, Intelimarc, and DOES 1-10)

35. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 34 as though fully set forth herein.

36. Defendants and each of them entered into one or more agreements or reached understandings between and among themselves, the purpose and intent of which were to perpetrate a fraud and deceit upon Plaintiff, and to breach the fiduciary duties owed to Plaintiff. Specifically, the Defendants and each of them conspired and agreed to unlawfully breach fiduciary duties owed to Plaintiff, convert assets of Plaintiff, defraud Plaintiff, institute a new earnings "formula," divert opportunities from Marketel to Intelimarc, and seize control of Marketel pursuant to a common scheme to unlawfully capture all of Marketel's assets, shares, and profits.

37. Defendants and each of them proximately caused injury to Plaintiff by so conspiring in an amount to be proven at trial, but not less than $795,121.10. In committing the acts alleged, the Defendants acted fraudulently, willfully, wantonly, maliciously, oppressively, and with a callous and intentional disregard of Plaintiff's interests, and subjected Plaintiff to severe and unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION – CONSTRUCTIVE FRAUD

(Against Defendants Hassell, Intelimarc, and DOES 1-10)

38. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39. Defendants and each of them were in a relationship of trust and confidence with Plaintiff, intentionally fostered and encouraged Plaintiff's trust and confidence, and knew of Plaintiff's trust and confidence. Because Hassell was the sole shareholder of Intelimarc, and Ortiz believed Hassell was the sole director and officer, Ortiz placed the same trust and confidence in Intelimarc as she did in Hassell personally. Hassell fostered Ortiz's trust in Intelimarc by, among other things, placing an advertising "buy" through Intelimarc (prepared by Plaintiff) while Plaintiff was unavailable to transfer funds and place the buy on behalf of Marketel; the buy profit was to be repaid, and was repaid, by Intelimarc to Marketel. Defendants and each of them breached their legal and equitable duties, Plaintiff's trust, and Plaintiff's

confidence by their actions described in the foregoing paragraphs 1 through 36. Defendants and each of them took advantage of their position of trust and confidence in order to benefit themselves. Defendants and each of them gained an advantage thereon by capturing complete control of Marketel, acquiring Plaintiff's property, acquiring Plaintiff's share of profits, and diverting and usurping Marketel's opportunities, among other actions.

40. Plaintiff actually and justifiable relied upon the foregoing misrepresentations and actions. Defendants and each of them have proximately caused Plaintiff damage in an amount to be proven at trial, but not less than $795,121.10. In committing the acts alleged, Defendants and each of them fraudulently, willfully, wantonly, maliciously, oppressively, and with a callous and intentional disregard of Plaintiff's interests, subjected Plaintiff to severe and unjust hardship, knowing that their conduct was substantially likely to vex, annoy, and injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION –
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

(Against Defendants Hassell and DOES 1-10)

41. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff and Hassell entered into a written contract in or about 2011 – the Agreement of Ownership. The Agreement of Ownership governed the general ownership of Marketel.

43. Implied within the Agreement of Ownership was a covenant of good faith and fair dealing.

44. By changing the earnings allocation of Marketel, usurping Marketel's opportunities, and conspiring against Plaintiff, Defendants and each of them breached the implied covenant of good faith and fair dealing.

45. Defendants and each of their acts have proximately caused Plaintiff damage in an amount to be proven at trial, but not less than $795,121.10.

12

## EIGHTH CAUSE OF ACTION – FRAUD BY CONCEALMENT

(Against Defendants Hassell, Intelimarc, and DOES 1-10)

46. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 45 as though fully set forth herein.

47. Defendants and each of them actively concealed Hassell's diverting and usurping of Marketel's opportunities by failing to inform Plaintiff from the date of usurpation until the filing of this lawsuit. Defendant and each of them could have, but did not, inform Plaintiff of the usurpation by e-mail, letter, telephone, or any other manner in which Plaintiff and Hassell regularly communicated. Plaintiff is informed and believes, and on that basis alleges, that Defendants and each of them were located in North Carolina. By their words and conduct, Defendants and each of them represented to Plaintiff that no such usurpation had taken place.

48. Defendants' concealment was reasonably calculated and intended to deceive Plaintiff, which did in fact deceive Plaintiff. Defendants had a duty to disclose and intentionally failed to disclose the usurpation of Marketel's opportunities. Defendants' concealment was as to a material fact upon which Plaintiff actually and justifiably relied.

49. Defendants' acts have proximately caused Plaintiff damage in an amount to be proven at trial, but not less than $95,121.10.

50. The aforementioned conduct was an intentional misrepresentation, deceit, and/or concealment of material facts known to Defendants was done fraudulently, maliciously, willfully, wantonly, and oppressively, with the intention on the part of Defendants of thereby depriving Plaintiff of property, legal rights, or otherwise causing injury and was despicable conduct that subjected to cruel and unjust hardship and conscious disregard of Plaintiff's rights, as to justify an award of exemplary and punitive damages.

## NINTH CAUSE OF ACTION – MANDATORY BUYOUT

(Against Defendant Marketel Media, Inc.)

51. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

13

52. It is reasonably necessary for the protection of Plaintiff's rights and interests for the court to order a mandatory buyout of Plaintiff's shares in Marketel.

53. Pursuant to North Carolina General Statute § 55-14-30, Plaintiff seeks a court order for a mandatory buy-out of Plaintiff's shares in Marketel at an amount to be determined at trial.

## TENTH CAUSE OF ACTION –
## COMPEL INSPECTION OF BOOKS AND RECORDS

(Against Defendants Hassell, Marketel, and DOES 1-10)

54. Plaintiff realleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55. At all times herein, Plaintiff is and was a beneficial holder of stock in Defendant Marketel Media, Inc.

56. On February 14, 2013, Plaintiff, via her attorneys, sent a letter to Defendants Marketel and Hassell, requesting that corporate documents be produced pursuant to North Carolina General Statutes §§ 55-16-02 and 55-16-03 within five (5) business days. A true and correct copy of that letter is hereto attached as **Exhibit B**. Those document categories are as follows:

    a. articles of incorporation with all amendments;

    b. bylaws with all amendments;

    c. directors' resolutions creating and defining any class or series of shares that are outstanding pursuant to those resolutions;

    d. minutes of all shareholders' meetings and records of all action by shareholders without a meeting for the past three years;

    e. financial statements and all communications to shareholders within the past three years;

    f. all names and business addresses of the current directors and officers;

14

g.  most recent annual report;

h.  records of any final action taken by the board of directors or by a committee of the board acting in place of the board on behalf of the corporation;

i.  minutes of any shareholders' meetings and records of action by shareholders without a meeting more than three years old;

j.  all accounting records of the corporation;

k.  record of shareholders;

l.  all other corporate records;

m.  the "long and expensive financial research" referred to in Mr. Hassell's e-mail of 2/14/13;

n.  all documents pertaining to the "$80,000" in overpayments purportedly made to consulting companies referred to in Mr. Hassell's e-mail of 2/14/13;

o.  all requests for refunds on alleged overpayments made to any consulting companies referred to in Mr. Hassell's e-mail of 2/14/13;

p.  the canceled check showing $18,000 for the initial capital contribution claimed by Mr. Hassell, as referred to in his e-mail of 2/14/13;

q.  all checks alleged to be forged by Ashley Long;

r.  copies of statements identifying all fraudulent debit card charges in the Marketel account, as alleged in Mr. Hassell's 2/14/13 e-mail;

s.  all communications – including but not limited to letters, e-mails, or memoranda – between Marketel and its attorneys, Mr. deRosset and Young Moore & Henderson, in the last three years;

t.  all communications – including but not limited to letters, e-mails, or memoranda – between Mr. Hassell and Mr. deRosset or any other member of Young Moore & Henderson in which Marketel, Ms. Ortiz, Ashley Long, or Christina (Mr. Hassell's prior assistant) are discussed in the last three years;

15

u. copies of all invoices from Mr. deRosset or Young Moore & Henderson to Marketel in the last three years;

v. copies of all invoices from Mr. deRosset or Young Moore & Henderson to Mr. Hassell for services relating to Marketel in the last three years; all agreements between Marketel and Mr. deRosset or Young Moore & Henderson;

w. all checks from Marketel to Mr. deRosset or Young Moore & Henderson;

x. all prepared and/or filed police reports of embezzlement, fraud, or other crimes, as against Ashley Long or Christina (Mr. Hassell's assistant prior to Ms. Long).

57. Plaintiff's purpose of the demand for inspection was "to determine the value of Ms. Ortiz' interest in the corporation and the corporation's financial condition, to communicate with all other purported shareholders, and to determine the extent of waste and mismanagement within the corporation." (See Exhibit B.) All of the categories requested by Plaintiff were necessary for these purposes.

58. On February 20, 2013, Defendants Marketel and Hassell forwarded a letter, via their attorneys, stating that they "are also working with Mr. Hassell to compile the books and records of Marketel that Ms. Ortiz is permitted to review pursuant to applicable North Carolina General Statutes and will let you know when that information is available for Ms. Ortiz's copying and/or inspection."

59. On February 26, 2013, Plaintiff's counsel telephoned Defendants' counsel regarding the inspection of books and records. Defendants' counsel stated that some of the books and records would be produced on March 5, 2013, but not all of the records would be produced.

60. On March 14, 2013, Defendants' counsel e-mailed copies of various corporate records, but refused to comply with the all of the document requests enumerated in Exhibit B.

16

Defendants Hassell and Marketel have also withheld documents responsive to the categories that their counsel specifically asserted was produced.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Kelly Jenkins Ortiz, respectfully prays for the following:

1. Damages in an amount to be proven at trial, but not less than $795,126.10;

2. Punitive damages in an amount to be proven at trial;

3. A constructive trust against any monies received by Hassell from Marketel in excess of the original income division plan and Hassell's interests in Intelimarc and DOES 1-10;

4. An order requiring Defendants Hassell and Marketel to file, within twenty days, a sworn accounting of all monies flowing into or out of Marketel (including Intelerep) and Intelimarc;

5. An order requiring Defendants Hassell and Marketel Media, Inc. to file, within twenty days, a sworn affidavit of a reasonable search for and actual production of all documents requested by Plaintiff's letter at Exhibit B;

6. An order for a mandatory buyout of Plaintiff's interest in Marketel at fair value;

7. Attorneys' fees and costs; and

8. Any further relief the Court deems just or proper.

DATED: January 6, 2014

/s/ ALKA SRIVASTAVA
ALKA SRIVASTAVA
N.C. State Bar No. 43228
DAN M. HARTZOG
N.C. State Bar No. 5648
Attorneys for Plaintiff
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
Facsimile: 919/828-2277
E-mail: dmh@cshlaw.com
        asrivastava@cshlaw.com

17

Case 5:13-cv-00427-D   Document 24   Filed 01/06/14   Page 17 of 19

## DEMAND FOR JURY TRIAL

Plaintiff Kelly Jenkins Ortiz hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: January 6, 2014

/s/ ALKA SRIVASTAVA
ALKA SRIVASTAVA
N.C. State Bar No. 43228
DAN M. HARTZOG
N.C. State Bar No. 5648
Attorneys for Plaintiff
CRANFILL SUMNER & HARTZOG LLP
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
Facsimile: 919/828-2277
E-mail: dmh@cshlaw.com
asrivastava@cshlaw.com

Case 5:13-cv-00427-D   Document 24   Filed 01/06/14   Page 18 of 19

CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing **Second Amended Complaint for (1) Breach of Fiduciary Duty; (2) Breach of Fiduciary Duty; (3) Breach of Fiduciary Duty; (4) Conversion; (5) Civil Conspiracy; (6) Constructive Fraud; (7) Breach of Implied Duty of Good Faith and Faith Dealing; (8) Fraud by Concealment; (9) Mandatory Buyout; and (10) Compel Inspection of Books and Records (*Demand for Jury Trial*)** was filed electronically with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing addressed as follows:

William S. Cherry
MANNING FULTON & SKINNER
3605 Glenwood Avenue, Suite 500
Raleigh, North Carolina 27619-0389
Attorneys for Defendants
E-mail: cherry@manningfulton.com

Natalie M. Rice
MANNING FULTON & SKINNER
3605 Glenwood Avenue, Suite 500
Raleigh, North Carolina 27619-0389
Attorneys for Defendants
E-mail: nrice@manningfulton.com

This the 6th day of January, 2014.

                                               /s/ Alka Srivastava
                                               Alka Srivastava
                                               N.C. State Bar No. 43228
                                               Dan M. Hartzog
                                               N.C. State Bar No. 5648
                                               Attorneys for Plaintiff
                                               CRANFILL SUMNER & HARTZOG LLP
                                               Post Office Box 27808
                                               Raleigh, North Carolina 27611-7808
                                               Telephone: 919/828-5100
                                               Facsimile: 919/828-2277
                                               E-mail: dmh@cshlaw.com
                                                        asrivastava@cshlaw.com